1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**TERRITORY OF GUAM**

10

11

UNITED STATES OF AMERICA for the use and benefit of PORGES ELECTRICAL GROUP, INC.,

12

Plaintiff,

13

14

v.

15

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA and PATRICIA I. ROMERO, INC., doing business as PACIFIC WEST BUILDERS,

16

17

Defendants.

18

19

Case No.:   CV 15-00024

**ORDER RE: 1) DEFENDANT'S MOTION FOR ATTORNEYS' FEES, COSTS AND PREJUDGMENT INTEREST; 2) PLAINTIFF'S MOTION TO BE DETERMINED TO BE THE PREVAILING PARTY AND FOR AN AWARD OF ATTORNEYS' FEES AND NON-TAXABLE COSTS; 3) PLAINTIFF'S BILL OF COSTS; AND 4) PLAINTIFF'S MOTION FOR AN AWARD OF PREJUDGMENT INTEREST**

20

        The matters before the Court are 1) Defendant Patricia I. Romero, Inc. dba

21

Pacific West Builders' ("Defendant's") Motion for Attorneys' Fees, Costs, and

22

Prejudgment Interest; 2) Plaintiff Porges Electrical Group, Inc.'s ("Plaintiff's" or

23

"PEG's" or "Porges'") Motion To Be Determined To Be the Prevailing Party and

24

for an Award of Attorneys' Fees and Non-Taxable Costs; 3) Plaintiff's Bill of

25

Costs[1]; and 4) Plaintiff's Motion for an Award of Prejudgment Interest.  (Dkt. Nos.

26

27

28

---

[1] Because Defendants filed an objection to Plaintiff's Bill of Costs, the matter was referred to the district court for ruling.  *See* District of Guam Local Rule 54(b)(4) ("Upon the timely filing of any objections, the Clerk of Court will refer both the Bill of Costs and objections to the Court for a determination of taxable costs.").

1

314, 315, 316, 317.)  The matters are fully briefed.

# I. BACKGROUND

Defendant Pacific West Builders ("PWB") entered into two prime contracts with the Government, one to construct a Working Dog facility at the Apra Harbor Naval Base in Guam ("Military Working Dog Project" or "MWD Project") and one to construct the Red Horse Cantonment Operation Facility at Anderson Air Force Base ("Red Horse Project"). PWB subsequently entered into a written subcontract with Plaintiff PEG with respect to certain electrical work to be performed on the two projects. The projects experienced various delays. PEG contends it was required to do extra work beyond the scope of the contract and PWB failed to pay the balance due under the subcontracts. PEG brought suit against PWB asserting claims for 1) breach of contract; 2) reasonable value/quantum meruit; and 3) recovery under the Miller Act Payment Bonds relating to two separate subcontracts for construction at two separate construction projects.  PWB contended it suffered damages as a result of PEG's failure to fulfill all of its contractual obligations, and asserted counterclaims for breach of contract on the Red Horse project and breach of contract on the Working Dog project against PEG. The jury found in favor of Plaintiff PEG on all of its claims, but also found for Defendant PWB on its counterclaims for breach of contract.

Following trial, PWB filed a Motion for Judgment as a Matter of Law and Motion for a New Trial.  On April 13, 2021, the Court granted PWB's Motion for Judgment as a Matter of Law on PEG's reasonable value claim and conditionally ordered a new trial should the judgment be vacated or reversed on appeal, and denied the motion for judgment as a matter of law as to all other claims.  (Dkt. No. 288 (the "Order").)  The Court granted PWB's Motion for a New Trial on damages only as to three categories:  Field Office Overhead, Extra Work, and Fire Alarm Redesign.  (*Id*.)

On July 29, 2021, the Court granted PEG's request for a proposed

2

remittitur in the amount of $94,486.73 in lieu of a new trial on damages and issued an amended judgment consistent therewith 1) against PWB and in favor of Plaintiff on Plaintiff's breach of contract claim for the Working Dog project in the amount of $178,809.72; 2) against Defendant Travelers Casualty and Surety Company of America ("Travelers") and in favor of Plaintiff on Plaintiff's Miller Act claim for the Working Dog project in the amount of $63,776.90; 3) against Plaintiff and in favor of PWB on the reasonable value claim for the Working Dog project; and 4) against PWB and in favor of Plaintiff on Plaintiff's breach of contract claim for the Red Horse project in the amount of $341,406.98. (Dkt. Nos. 308, 309.)

## II. STATEMENT OF THE LAW

40 U.S.C. §§ 3131 and 3133 provide for the right of persons who have furnished labor or materials in carrying out work provided for in a contract for which a payment bond is furnished and who have not been paid within 90 days after the performance of the last labor or furnished or supplied material for which the claim is made to bring a civil action on the payment bond for the amount unpaid. Fed. R. Civ. Proc. 54(d) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."

Under Guam law, "the measure and mode of compensation of attorneys and counselors at law is left to the agreement, expressed or implied, of the parties." 7 G.C.A. § 26601(f).[2] District of Guam Local Rule 54(c) provides that a motion for

---

[2] *See Fleming v. Quigley*, 2003 Guam 4, ¶ 11 (Guam Feb. 28, 2003) (finding G.C.A. § 26601(f) refers to "agreements between opposing parties" and "reflects the American Rule in this jurisdiction, which prevents fee-shifting unless authorized by contract or statute") (citing Cal. Civ. Code Proc. § 1021); *Camacho Fam. P'ship v. Patricia I. Romero, Inc.*, 2018 WL 1413174, at *4 (D. Guam Mar. 21, 2018), *amended sub nom. Camacho Fam. P'ship v. Patricia I. Romero, Inc.*, 2018 WL 3025937 (D. Guam June 18, 2018) ("Under Guam law, contractual provisions authorizing attorney fees are exceptions to the American Rule by which each party bears its own litigation expense."); *Senato v. Querimit*, 1994 WL 550053, at *4 (D. Guam App. Div. Oct. 3, 1994) (Because G.C.A. § 26601(f) is "identical to section 1021 of the California Code of Civil Procedure, 'we look to

3

attorney's fees and nontaxable costs "shall specify the applicable judgment and statutory or contractual authority entitling the moving party to the requested award and the amount of attorney's fees and related non-taxable expenses sought." 20 G.C.A. § 2110 provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him, upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt."

Moreover, Cal. Civ. Code § 1717(a) provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."[3]

## III. DISCUSSION

### A. Prevailing Party

The General Conditions Clause 18 of the parties' subcontracts provides:

> Should either party to this Subcontract be required to initiate any legal action or proceedings to enforce this Subcontract, or to recover damages for the breach thereof, the losing party agrees to pay court costs and reasonable attorneys' fees incurred by the prevailing party….

(Trial Exhibit 31.17 (Working Dog); Trial Exhibit 358.16 (Red Horse)). Defendant PWB contends there is no prevailing party in this action, whereas Plaintiff argues it is the prevailing party.

---

California law'" for guidance.").

[3] As this Court noted in its Order re Defendants' Motion for Judgment as a matter of law and Defendant's Motion for a new trial, Plaintiff's "claims under the Miller Act are governed by federal law," "[a]ll other claims in this action are governed by state law," "[n]o party has asked the Court to apply any state law other than Guam," but "[a]s the Guam Code provisions relating to contracts were adopted from the California Civil Code the court also draws from California contract law' as necessary." (Dkt. No. 288 at 4.)

4

"Generally, the prevailing party to a suit, for the purpose of determining who is entitled to attorney fees, is the one who successfully prosecutes the action or successfully defends against it, prevailing on the merits of the main issue." *Rahmani v. Park*, 2011 Guam 7, ¶ 61 (Guam Apr. 15, 2011); *see also Guam Mem'l Hosp. Auth. v. Civil Serv. Comm'n*, 2015 Guam 18, ¶ 46 (Guam June 24, 2015) ("Generally, the prevailing party to a suit, for purposes of entitlement to recovery of costs in a contested case, ordinarily means the party achieving a favorable judgment."). Guam courts have rejected the "net judgment" rule as the "sole criterion for determining prevailing party for the purpose of awarding attorney fees" and instead "looked at the lawsuit as a whole to determine which party, if any, prevailed." *Rahmani*, 2011 Guam 7, ¶ 64. Thus, under Guam law, "recovery of a net judgment is but one of several factors for the trial court to consider, others being whether the party prevailed on any significant issue in litigation, and the proportion between what was sought by the party and what was actually recovered." *Id.*; *see also Camacho Fam. P'ship*, 2018 WL 1413174, at *4 ("where the jury has returned a split verdict, the trial court must not merely consider which party was the net-judgment winner, but must 'look at the lawsuit as a whole to determine which party, if any, prevailed.'"). It is within the discretion of the trial court to determine whether a single party prevailed, both parties prevailed and are entitled to recover attorney fees from the other or should bear their own fees, or that neither party prevailed and thus neither party is entitled to a fee award. *Id*.

Here, although Defendant PWB prevailed on its reasonable value claims, Plaintiff prevailed on its breach of contract and Millar Act claims. Plaintiff thus prevailed on significant issues in this litigation and achieved its main litigation goals. *See Rahmani*, 2011 Guam 7, ¶¶ 61, 64. Moreover, judgment was entered in favor of Plaintiff for a total amount of $520,216.70. The Joint Statement of the Case submitted by Plaintiff and Defendants stated "Porges sued PWB for approximately $800,000." (Dkt. No. 321-43.) Therefore, Plaintiff recovered a

5

significant portion of the amount it sought to recover. *Rahmani*, 2011 Guam 7, ¶ 64. Examining the lawsuit as a whole, the Court thus finds Plaintiff is the prevailing party entitled to fees and costs under the subcontracts.

**B.      Indemnity Provisions of Subcontracts**

Notwithstanding its contention that there is no prevailing party in this action, Defendant PWB seeks $1,250,935.60 in attorneys' fees and costs against Plaintiff pursuant to the contractual indemnity provision in the subcontracts between Plaintiff and PWB which provides:

> The Subcontractor agrees to hold and save harmless and to fully indemnify the Contractor for any and every liability arising out of the performance of work designated herein and will assume full responsibility for defending, paying, or otherwise settling any and all claims, demands, actions for causes of actions of every nature, including but not limited to claims for wages and materials furnished by the Subcontractor under this Subcontract and for injury or damages to persons or property arising out of the Subcontractor's performance of this Subcontract and for damage or injury to the Contractor or to any other person arising out of the Subcontractor's failure to perform under the Subcontract. Should Subcontractor fail to defend or indemnify Contractor from such liability, Contractor may provide for his own defense, and the costs of the same, including but not limited to attorney's fees and court cost, shall be paid by the Subcontractor to [C]ontractor.

(Exs. 31, 358.)

In *Camacho Fam. P'ship v. Patricia I. Romero, Inc.,* a case cited by Defendant, the parties' subcontract included an indemnity provision which provided that "[t]he Subcontractor agrees to hold and save harmless and to fully indemnify the Contractor for any and every liability arising out of the performance of work designated herein ... and for damage or injury to the Contractor or to any other person arising out of the Subcontractor's failure to perform under the Subcontract," and if the subcontractor "fail[s] to defend or indemnify Contractor from such liability, Contractor may provide for his own defense, and the costs of the same, including but not limited to attorney's fees and court cost, shall be paid by the Subcontractor to contractor." 2018 WL 1413174, at *6. The subcontract, like the subcontracts at issue here in this action, also included a separate clause

6

regarding awarding attorneys' fees and costs to the prevailing party in lawsuits brought to enforce the contract. *Id*. The district court in *Camacho* noted: "The Guam Code requires that contracts be 'so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting ...' 18 G.C.A. § 87102. For written contracts, 'the intention of the parties is to be ascertained from the writing alone, if possible[.]' 18 G.C.A. § 87105. 'The whole of the contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' 18 G.C.A. § 87107. When the language is ambiguous or uncertain, 'the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.' 18 G.C.A. § 87120." *Id*. Applying these legal principles, the district court noted that the indemnity provision "must be harmonized, if practicable," with the prevailing party provision which "allocates the prevailing party's attorneys fees and court costs to the losing party," and reasoned that "[e]very part of the contract relating to legal fees can be given effect if the language of ¶ 18 [the prevailing party provision] is read naturally to say that if one party sues the other, the prevailing party is awarded attorney fees and court costs, and if ¶ 1 [the indemnity provision] is understood to relate only to third-party actions." *Id*. at *7. The district court emphasized "[i]f a party could still seek indemnification despite not 'prevailing,' then the prevailing-party analysis would be meaningless." *Id*. Therefore, the district court found that the indemnity provision of the parties' subcontract was limited to indemnification of PWB for third-party claims against it, and that the prevailing party provision of the subcontract "controls the award of ay attorneys fees and court costs in litigation between the parties." *Id*.

Similarly, here, adopting Defendant PWB's interpretation of the indemnity provision to apply to disputes between the parties to the subcontracts (rather than to third-party claims) would render the prevailing parties' provision of the subcontracts meaningless. Under PWB's interpretation, Plaintiff would be

7

required to indemnify Defendant PWB in a lawsuit brought by Plaintiff itself even if Plaintiff prevailed in that lawsuit against PWB, despite being a prevailing party in the lawsuit and despite the prevailing party provision in the subcontracts. Therefore, the Court finds the indemnification provision of the parties' subcontracts is limited to indemnification claims for third-party claims against PWB, and does not entitle PWB to an award of attorneys' fees and costs in this action.[4]

## C. Reasonable Attorneys' Fees

Having found Plaintiff is entitled to attorneys' fees and costs as the prevailing party, and Defendant PWB is not entitled to fees under the indemnity provisions of the subcontracts, the Court must determine a reasonable amount of fees to award to Plaintiff. Plaintiff seeks an award of $1,370,431.50 in fees incurred by lead counsel Finch, Thornton & Baird, LLC ("FTB") and $47,155.00 in fees incurred by local counsel the Camacho Calvo Law Group, LLC (the "Camacho firm").[5]

Courts use the "lodestar method" to determine the reasonableness of the requested attorneys' fees and costs. *Hensley v. Eckerhar*, 461 U.S. 424, 433 (1983). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (quotation omitted); *see also S.J. Gargrave Syndicate At Lloyds v. Black Const.*

---

[4] Plaintiff Porges also argues PWB is collaterally estopped from relitigating the meaning of its subcontract regarding attorneys' fees awards because this issue was conclusively litigated in the *Camacho* action, and that adopting Defendant PWB's interpretation of the indemnity provisions of the subcontracts to apply to disputes between the parties would cause the indemnity provision to be an unenforceable pre-claim waiver that makes the contract illusory. The Court need not reach these additional issues since the indemnity provision cannot be reasonably interpreted to apply to claims between the parties to the subcontract.

[5] Included within Plaintiff's fee request is fees incurred for Plaintiff's motion for fees. A prevailing party may properly recover fees on fees. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1141 (2001) (finding a party entitled to award of fees was also entitled to fees incurred in preparing its motion for attorneys' fees.)

8

*Corp.*, 2006 WL 1815325, at *2 (D. Guam June 29, 2006) ("In calculating attorney fee awards, courts begin by determining the 'lodestar figure' that results from multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."); *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) ("[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate."). Once the Court has established the number of hours reasonably expended, the Court must determine a reasonable hourly rate by considering the experience, skill, and reputation of the attorney requesting fees. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). "It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court." *PLCM Grp.*, 22 Cal. 4th at 1096.

### 1. Hours Reasonably Expended

As to the time spent, Plaintiff submits copies of reports from FTB's time entry and accounting system showing the time entry descriptions, the billing attorney, the time billed for the described work, and the amount billed. (Gauthier Decl. ¶ 2; Notice of Lodgment Exs. 8, 9.) Plaintiff's counsel Gauthier also attests to the tasks performed and number of hours spent by FTB attorneys on those tasks in his declaration (Gauthier Decl. ¶¶ 6-34), and submits itemized descriptions of the tasks performed by FTB attorneys for the Working Dog and Red Horse projects of the exact number of hours billed to provide additional information demonstrating the hours worked were reasonable (*id.* ¶¶ 5, 35, Exs. 1, 2).[6] The evidence submitted by Plaintiff therefore demonstrates the hours expended by FTB on the litigation were reasonable.

With respect to fees incurred by the Camacho firm, Plaintiff submits a

---

[6] The evidence and billing records reflect 2,165.70 hours expended by FTB on the Working Dog project and 1,890.00 hours expended by FTB on the Red Horse project in connection with this litigation. (*See* Notice of Lodgment Exs. 8, 9.)

9

computation of fees incurred by the Camacho firm in this action, and the actual invoices for the fees incurred, based on 182.28 hours worked. (Camacho Decl. ¶¶ 17, 18, Ex. 1; Notice of Lodgment Exhibit 12.)  Plaintiff's local counsel also filed a declaration attesting to the tasks performed by the Camacho firm.  (Camacho Decl. ¶¶ 6-16.)  The evidence submitted by Plaintiff therefore demonstrates the hours expended by the Camacho firm on the litigation were reasonable.

### 2. Reasonable Hourly Rates

Plaintiff offers evidence demonstrating its local counsel in Guam, the Camacho firm, is a full-service law firm that specializes in civil litigation and business law, and setting for the qualifications and experience of the attorneys from the Camacho firm who worked on this matter.  (Camacho Decl. ¶¶ 4, 5.)  Plaintiff also submits evidence that the hourly rates charged by the Camacho firm are comparable to other litigation law firms and attorneys of comparable experience in Guam and the Northern Mariana Islands.  (*Id*. ¶ 5.)  Therefore, the Court finds the hourly rates charged by Camacho are reasonable.  *See Aguero v. Calvo*, 2016 WL 1050251, at *3 (D. Guam Mar. 16, 2016) ("An established standard for determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'") (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)); *PLCM Grp*., 22 Cal. 4th at 1095 ("The reasonable hourly rate is that prevailing in the community for similar work.").

Plaintiff also seeks fees incurred by lead counsel FTB, located in San Diego. Plaintiff submits evidence demonstrating FTB specializes in construction law, the qualifications and experience of the FTB attorneys who worked on this matter including experience in construction disputes, and the rates charged by FTB are comparable to or less than rates charged by other attorneys specializing in construction law in Southern California.  (Gauthier Decl. ¶¶ 4, 5; Gossage Decl. ¶ 13, Nicholas Decl. ¶ 12.)  Therefore, the Court finds the hourly rates charged by

10

Camacho are reasonable.  *See Aguero*, 2016 WL 1050251, at *3.

### 3. Defendant Request a Reduction of Fees

Defendant contends the Court should reduce the fee award to Plaintiff because Plaintiff refused to substantiate its claims for payment on a federal construction project which forced the case to trial, and Plaintiff unreasonably caused the dispute to be tried and increased the attorneys' fees required to litigate this case by seeking payments before the government's final inspections and payments on both projects.  The Court finds that Plaintiff did not unreasonably cause this case to be tried, sue prematurely, or act unreasonably to increase the attorneys' fees incurred in this case.

\*       \*       \*

Accordingly, based on the lodestar method and the reasonable hourly rates and reasonable hours expended, the Court finds an award of $1,370,431.50[7] in attorneys' fees incurred by lead counsel FTB and $47,155.00 in attorneys' fees incurred by local counsel the Camacho Calvo Law Group, LLC is reasonable.

### D. Non-Taxable Costs

Having found Plaintiff is entitled to costs as the prevailing party, and Defendant PWB is not entitled to costs under the indemnity provisions of the subcontracts, the Court must determine the amount of costs to award to Plaintiff.

### 1. Camacho Firm Costs

Plaintiff seeks $4,931.54 in nontaxable costs incurred by the Camacho firm. Plaintiff submits a list of the costs incurred by the Camacho firm in this action, and copies of the invoices for each of the costs listed.  (Camacho Decl. Ex. 2; Notice of Lodgment Ex. 12.)  Plaintiff's counsel also separately attests to the types of costs incurred by the Camacho firm during the litigation, such as costs for

---

[7] While the billing records submitted by Plaintiff demonstrate $1,384,303.00 in attorneys' fees incurred by FTB (*see* Notice of Lodgment Exhibits 8, 9), Plaintiff's Motion only seeks $1,370,431.50 in attorneys' fees incurred FTB.

11

photocopying, word processing charges for preparing legal documents, court fees for filing the complaint and pro hac vice applications, service of process fees, mail, express, and delivery charges for documents, fees for electronic searches and document retrieval, the Guam 4%/5% gross receipts tax on charges for legal services, supplies for trial exhibits and transcripts for use at trial. (Camacho Decl. ¶¶ 19-22.) The Court finds these costs were reasonably and necessarily incurred in this action, and awards Plaintiff $4,931.54 in non-taxable costs incurred by the Camacho firm.

### 2. FTB Costs

Plaintiff seeks $63,672.42 in nontaxable costs incurred by FTB. Plaintiff submits an itemized list demonstrating the total expenses incurred by FTB as to the Working Dog project was $33,079.65[8] (Gauthier Decl. ¶ 37; Notice of Lodgment Ex. 3), and the total expenses incurred by FTB with respect to the Red Horse project was $30,592.77[9] (Gauthier Decl. ¶ 37, Notice of Lodgment Ex. 4). Plaintiff also submits copies of FTB's cost reports generated from FTB's time entry and accounting system which reflects the expenses incurred by FTB included in the itemized lists of expenses submitted by Plaintiff. (Gauthier Decl. ¶ 38; Notice of Lodgment Exs. 10, 11.)

Defendant argues that Plaintiff seeks "questionable 'non-taxable' costs, including mediator's compensation ($3,495); undefined skip trace ($200);

---

[8] Plaintiff's evidence demonstrates the $33,079.65 in non-taxable costs incurred by FTB as to the Working Dog project include the following: 1) $425.46 in costs from October 3, 2015, through December 31, 2017; 2) $26,040.72 in costs from January 2, 2018, through December 31, 2018 (incurred prior to the trial in this action); 3) $6,294.36 in costs from January 1, 2019 through May 31, 2019; and 4) $319.11 in costs from June 1, 2019, through July 31, 2021. (Gauthier Decl. ¶ 37; Notice of Lodgment Ex. 3.)

[9] Plaintiff's evidence demonstrates the $30,592.77 in non-taxable costs incurred by FTB as to the Red Horse project include the following: 1) $286.39 in costs from August 31, 2017, through December 31, 2017; 2) $24,953.49 in costs from January 23, 2018, through December 31, 2018 (incurred prior to the trial in this action); and 3) $5,352.89 in costs from January 1, 2019 through April 30, 2019. (Gauthier Decl. ¶ 37; Notice of Lodgment Ex. 4.)

database searches ($34.92); and cell phone charges incurred in Guam ($476.04)." As to the skip trace costs, FTB's cost report states that $200 were incurred "for skip trace service on witness Donald McHerron." It is unclear what "skip trace services" are and why these costs were reasonably necessary for the litigation. Therefore, the Court does not award the $200 in costs for "skip trace service on witness Donald McHerron." With respect to the mediator's compensation, "mediation costs fall within the category of costs that may be awarded in the trial court's discretion." *Berkeley Cement, Inc. v. Regents of Univ. of California*, 30 Cal. App. 5th 1133, 1140, 242 Cal. Rptr. 3d 252, 257 (2019). The Court finds the mediation costs are reasonable and Plaintiff is entitled to recover these costs. Plaintiff also seeks costs for cell phone charges incurred in Guam but no information was provided regarding why these charges were incurred and why they were reasonably necessary for the litigation. Therefore, the Court does not award the $476.04 for cell phone charges incurred in Guam.

Defendant does not specifically challenge the remaining non-taxable costs incurred by FTB, and the Court finds the remaining non-taxable costs were reasonably and necessarily incurred by FTB. Accordingly, the Court awards Plaintiff $62,996.38 in non-taxable costs incurred by FTB.

**E.   Taxable Costs**

Plaintiff also filed a Bill of Costs seeking $46,645.31 in taxable costs against Defendants pursuant to Federal Rules of Civil Procedure 54(d).[10] Defendants PWB and Travelers filed an objection and opposition to Plaintiff's Bill of Costs on the basis that Federal Rule of Civil Procedure 54(d) provides for costs to the prevailing party in an action, and that Plaintiff is not the prevailing party in this action and tis therefore not entitled to taxable costs. Having found Plaintiff is the prevailing party, the Court finds Plaintiff is entitled to taxable costs pursuant to

---

[10] The costs included in Plaintiff's Bill of Costs consist of $400 for fees of the clerk, $26,805.60 for transcript fees, and $19,439.71 for copying costs.

Federal Rule of Civil Procedure 54(d). *See* Fed. R. Civ. Proc. 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the ***prevailing party***.") (emphasis added). Accordingly, the Court awards Plaintiff taxable costs in the amount of $46,645.31.

## F. Prejudgment Interest

### 1. Interest Provision of Subcontracts

Notwithstanding its contention that there is no prevailing party in this action, Defendant PWB also seeks $17,309.76 in prejudgment interest against Plaintiff pursuant to the interest provision in the parties' subcontracts which provides:

> Whenever any money is expended or costs or expenses are incurred by Contractor on behalf of or on account of Subcontractor, which amounts Subcontractor should have paid, and for which amount Subcontractor is required to reimburse Contractor, or if Contractor continues or completes the work after default by Subcontractor, Subcontractor shall pay to Contractor interest at the rate of 10% per annum from the time said money is expended or said costs or expenses are incurred until those amounts are repaid to Contractor by Subcontractor.

(Exs. 31 ¶ 22, 358 ¶ 22.)

However, judgment was entered in favor of Plaintiff in the amount of $520,216.70. Therefore, PWB would have a net loss owed to Plaintiff and therefore is not entitled to prejudgment interest. *See Camacho Fam. P'ship*, 2018 WL 1413174, at *4 ("Assuming Defendant is entitled under the contract to prejudgment interest on the $246,672.94 . . . no interest will be awarded. This is because the award . . . is less than what PWB owes to Dirt Doktor. Because the net judgment for PWB is negative, it is not entitled to any prejudgment interest.") (citing *Great W. Drywall*, 166 Cal. App. 4th at 770 (holding party with a net loss after the amount owed to the opposing party was deducted from award was not entitled to prejudgment interest)).

### 2. Plaintiff's Motion for Prejudgment Interest

Plaintiff Porges also seeks prejudgment interest of 10% per year against

14

Defendants PWB and Travelers in the amount of $108,247.64 pursuant to 20 Guam Code Annotated § 2110. Specifically, Plaintiff seeks prejudgment interest on the $146,007.69 "in unpaid adjusted subcontract balance on Red Horse," $13,617.11 for extra work on the Working Dog project, and $22,749.54 for extra work on the Red Horse project which were awarded to Plaintiff in the Amended Judgment.

Guam Code Annotated § 2110 provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him, upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt." Damages that are certain or capable of being made certain are those where "the defendant actually knows the amount owed or from reasonably available information" could have calculated the amount owed. *Guam Top Builders, Inc. v. Tanota Partners*, 2012 Guam 12 ¶ 68 (2012). "[W]here there is a dispute between the parties concerning the basis of computation of damages" and the amount depends on resolution of conflicting evidence, "prejudgment interest is not allowable." *Camacho Fam. P'ship*, 2018 WL 1413174, at *2 (citing *Guam Top Builders, Inc.*, 2012 Guam 12 ¶ 68). The test for prejudgment interest is whether "'the defendant actually knows the amount owed or from reasonably available information' could have calculated the amount owed." *Id.*

### a.    Unpaid Balance of Red Horse Subcontract

Because PWB did not dispute the unpaid subcontract balance on the Red Horse subcontract,[11] PWB "actually knew the amount of potential damages" or "could calculate the amount based on information reasonably available" to it, so that the damages claimed by Plaintiff for the unpaid balance on the Red Horse

---

[11] *See* Opp. to Plaintiff's Fee Motion at 11:26-27 and 15:3-5 ("Defendants did not dispute the unpaid subcontract balance.").

subcontract are certain and entitle Plaintiff to prejudgment interest. *See id.* at \*3 (rejecting PWB's argument that the plaintiff was not entitled to prejudgment interest because the damages awarded were not "certain" based on conflicting evidence regarding damages, finding award of prejudgment interest to plaintiff was proper where "PWB never denied the amounts in dispute with respect to Plaintiff's claim for work done" and thus "PWB actually knew the amount of potential damages" or "could calculate the amount based on information reasonably available" to it, and therefore the damages claimed by the plaintiff were "certain" for purposes of awarding prejudgment interest); *Phoenix Eng'g & Supply Inc. v. Universal Elec. Co.*, 104 F.3d 1137, 1141 (9th Cir. 1997) (holding "the Appellate Division did not err in affirming the Superior Court's award of prejudgment interest to Phoenix because under Guam law such an award is authorized if the amount owed is readily ascertainable" where "[t]he record show[ed] that Universal was able to determine the amount due Phoenix, as evidenced by account reconciliations that it prepared for internal reporting purposes").[12]

### b.    Extra Work Claims

As to prejudgment interest on the Amended Judgment amount awarded for Plaintiff's extra work claims, Defendants contend Plaintiff is not entitled to prejudgment interest for damages awarded for Plaintiff's extra work claims which depended on disputed and conflicting evidence and that the amounts owed were not determined until the jury's verdict, the Court's order on the parties' post-trial motions, and the Amended Judgment after the Remittitur. Because the damages for Plaintiff's extra work claims was not known to PWB and could not be calculated based on information reasonably available to it prior to trial, Plaintiff is

---

[12] *Cf. Milhouse v. Travelers Com. Ins. Co.*, 641 F. App'x 714, 718 (9th Cir. 2016) (the district court "did not err in declining to impose prejudgment interest" where "the parties were unable to agree on the valuation of the Milhouses' claims on their dwelling, ordinance/law, and personal property policies").

not entitled to prejudgment interest on the $13,617.11 in extra work costs on the Working Dog Project and $22,794.54 in extra work costs for the Red Horse Project awarded to Plaintiff in the Amended Judgment.[13]

### c. Time Period for Interest

Guam Code Annotated § 2110 provides that prejudgment interest begins to run from the day "the right to recover . . . is vested, . . . except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt."

Defendants contend that even if Plaintiff is entitled to prejudgment interest, Plaintiff should not be awarded interest for six years from August 22, 2015 onwards because PWB had the legal and contractual right to withhold the Red Horse subcontract balance based on Plaintiff's breach of the subcontract pursuant to paragraph 22 of the Red Horse and Working Dog subcontracts, which provides: "In the event that the balance of the monies left in this subcontract are insufficient to cover Contractor's damages or exposure, the Contractor shall have the right to offset against monies owed Subcontractor on other projects, if any." (Ex. 358 ¶ 22, Ex. 31 ¶ 22.) PWB argues because the jury awarded $2,400 on the unpaid balance on the Working Dog subcontract, but awarded $31,041.09 to PWB for back charges on the Working Dog Project, PWB was permitted to withhold the balance due on the Red Horse project.[14] However, Defendants did not dispute the

---

[13] *See Milhouse*, 641 F. App'x at 718 (the district court "did not err in declining to impose prejudgment interest" where "the parties were unable to agree on the valuation of the Milhouses' claims on their dwelling, ordinance/law, and personal property policies"); *Camacho Fam. P'ship*, 2018 WL 1413174, at *2 (damages are certain for purposes of a prejudgment interest award where "the defendant actually knows the amount owed or from reasonably available information," but "where there is a dispute between the parties concerning the basis of computation of damages" and "the amount depends on resolution of conflicting evidence, prejudgment interest is not allowable") (citing *Guam Top Builders*, 2012 Guam 12 ¶ 68); *Asia Pac. Hotel Guam, Inc. v. Dongbu Ins. Co., Ltd*, 2015 Guam 3, ¶ 60 (Guam Feb. 3, 2015) ("prejudgment interest is not allowable where there is a dispute between the parties concerning the basis of computation of damages so that the amount of damages depends upon a judicial determination based on conflicting evidence") (internal quotations and citation omitted).

[14] Defendants also argue because PWB is entitled to recover attorneys' fees under the indemnity provision, Plaintiff's breach of the Working Dog subcontract

unpaid balance owed by PWB for the Red Horse subcontract nor argue that

Plaintiff prevented Defendants from paying the balance on the Red Horse balance.

Furthermore, the jury found that the balance on the Red Horse subcontract was

owed to Plaintiff and awarded $149,151.61.[15]

Defendants also argue PWB was authorized to withhold payments from

Plaintiff based on Plaintiff's breach of the Red Horse subcontract pursuant to

paragraph 9 of the subcontract which provides:

> In the event that the Subcontractor shall fail to correct, replace or reexecute faulty or defective work or fails or refuses to supply enough skilled workers and proper materials to diligently proceed with this Subcontract within the time provided for…the Contractor may, at its option, after forty-eight (48) hours written notice, provide any such labor and materials as may be necessary to supplement or replace Subcontractor, and back charge against Subcontractor the cost thereof plus Contractor's overhead and profit at a combined rate of 15% of the cost.  In the event that the Contractor exercises his option to terminate under this clause he/she shall have the right to take possession of all the tools and materials of the Subcontractor then on the jobsite for the purpose of completing this Subcontract and Subcontractor shall not be entitled to any further payments under this Subcontract until the work is finished.

(Ex. 358 ¶ 9).  However, paragraph 9 does not preclude an award of prejudgment

interest to Plaintiff.  *See Camacho Fam. P'ship*, 2018 WL 1413174, at *4 (finding

paragraph 9 of the General Condition Clauses of the parties' subcontract which

stated that the subcontractor shall not be entitled to "further payments ... until the

work is finished" if terminated for failing to correct faulty work," did not preclude

an award of prejudgment interest to the plaintiff where the jury found payments to

the plaintiff up until the date it was terminated were wrongly withheld).

Here, the parties' Red Horse subcontract provides:

> The Contractor shall within 7 working days of receipt of payment

---

authorized PWB to withhold the balance owed on the Red Horse subcontract.
However, as discussed above, Defendants are not entitled to attorneys' fees under
the indemnity provision because the indemnity provision only applies to disputes
with third parties.

[15] The Amended Judgment after the Remittitur ultimately awarded $146,007.69 for
the unpaid Red Horse subcontract balance.

> from the Owner pay the Subcontractor for such work, labor, materials and services, excepting that if the owner shall withhold a retention from the Contractor, then Contractor may, at its sole and complete discretion, withhold a retention in equal percent from subcontractor's payment.

(Ex. 358.) Patricia Romero, the President of Defendant PWB, declares that PWB received final payment on the Red Horse Project on May 2, 2019. (Romero Decl. ¶ 3.) Therefore, based on the Red Horse subcontract language, Plaintiff's right to recover for the unpaid balance on the Red Horse project began to run seven working days after May 2, 2019 when PWB was paid for the Red Horse project.[16] *See Camacho Fam. P'ship*, 2018 WL 1413174, at \*1, \*4 (finding "the payments owed to [the plaintiff] for November through December 2013 should have been made within seven working days of the Navy paying PWB on December 5 and 27, 2013" and the plaintiff "shall be entitled to prejudgment interest consistent with this determination," where the parties' subcontract provided that PWB "had to make the progress payments [to the plaintiff] within seven working days of receipt of payment from the United States Navy").

### d. Rate of Interest

Under Guam law, the prejudgment interest rate is 6% unless the parties have agreed to a different rate of interest in a written contract. 18 G.C.A. § 47106. Plaintiff argues that the parties' subcontracts provide for a 10% prejudgment interest rate, relying on paragraph 22 of the subcontracts. However, paragraph 22 of the subcontracts provides: "Subcontractor shall pay to Contractor interest at the rate of 10% per annum from the time said money is expended or said costs or expenses are incurred until those amounts are repaid to Contractor by Subcontractor." (Ex. 31 ¶ 22, Ex. 358 ¶ 22.) Plaintiff was the subcontractor and

---

[16] Plaintiff seeks prejudgment interest on the unpaid balance for the Red Horse subcontract starting on August 22, 2015—30 days after the final invoice for the Red Horse project was issued on July 23, 2015. However, the invoice does not state that payment is due within 30 days of the invoice. Therefore, Plaintiff's right to recover for the unpaid Red Horse contract balance vested seven working days after PWB received payment for the Red Horse project.

19

PWB was the Contractor, but paragraph 22's 10% per annum interest rate applies to interest on money owed by the subcontractor to the contractor. Accordingly, paragraph 22 of the parties' subcontracts does not apply to any prejudgment interest award to Plaintiff, and the 6% statutory interest rate applies with respect to prejudgment interest for the unpaid balance of the Red Horse subcontract. *See* 18 G.C.A. § 47106. Therefore, Plaintiff is entitled to prejudgment interest at the rate of 6% for the unpaid balance of the Red Horse project running from seven working days after May 2, 2019.

## IV. CONCLUSION

Accordingly, the Court:

1. **<u>DENIES</u>** Defendant's Motion for Attorneys' Fees, Costs, and Prejudgment Interest;

2. **<u>GRANTS</u>** Plaintiff's Motion To Be Determined To Be the Prevailing Party and for an Award of Attorneys' Fees and Non-Taxable Costs;

3. **<u>GRANTS</u>** Plaintiff's Bill of Costs; and

4. **<u>GRANTS</u>** Plaintiff's Motion for Prejudgment Interest.

Plaintiff is therefore awarded the following against defendants Patricia I. Romero, Inc., dba Pacific West Builders ("PWB") and Travelers Casualty and Surety Company of America ("Travelers"):

1. $1,370,431.50 in attorneys' fees for fees incurred by Finch, Thornton & Baird, LLC;

2. $47,155.00 in attorneys' fees for fees incurred by the Camacho Calvo Law Group, LLC;

3. $62,996.38 in non-taxable costs incurred by Finch, Thornton & Baird, LLC;

4. $4,931.54 in non-taxable costs incurred by the Camacho Calvo

20

| | |
|---|---|
| 1 | Law Group, LLC; |
| 2 | 5.   $46,645.31 in taxable costs; and |
| 3 | 6.   prejudgment interest at the rate of 6% for the unpaid balance of |
| 4 |        the Red Horse project running from seven working days after |
| 5 |        May 2, 2019. |
| 6 | |
| 7 | **IT IS SO ORDERED.** |
| 8 | |
| 9 | DATED:  April 13, 2022. |
| 10 | CONSUELO B. MARSHALL |
|  | UNITED STATES DISTRICT JUDGE |

21